1

2

3

4                    UNITED STATES DISTRICT COURT

5                   NORTHERN DISTRICT OF CALIFORNIA

6

7   MICHAEL ANDREW RUSSELL,              Case No. 17-cv-00065-SVK

8                 Plaintiff,              **ORDER ON MOTIONS FOR**
                                          **SUMMARY JUDGMENT**
9        v.
                                          Re: Dkt. Nos. 24, 25
10  NANCY A. BERRYHILL,

11                Defendant.

12          Plaintiff Michael Andrew Russell ("Plaintiff"), as heir and representative of the estate of

13  Yvonne Susan Russell ("Claimant"), seeks review of a final decision of the Commissioner of

14  Social Security denying Claimant's application for a period of disability and disability insurance

15  benefits under Title II of the Social Security Act.  Plaintiff presents two issues for review:

16  (1) Plaintiff asserts that the Administrative Law Judge ("ALJ") erred in assessing Claimant's

17  residual functional capacity, and (2) Plaintiff asserts that the ALJ erroneously concluded that

18  Claimant had skills from her previous jobs that were transferable to other available jobs.  ECF 24

19  ("Pl. MSJ").  Before the Court are the parties' cross-motions for summary judgment.  *See id.*; ECF

20  25 ("Def. MSJ").

21          Having considered the cross-motions for summary judgment, the relevant law, and the

22  record in this case,[1] the Court finds that the ALJ erred in evaluating Claimant's residual functional

23  capacity because the ALJ failed to provide clear and convincing reasons, supported by substantial

24  evidence, for not giving the medical opinion of Claimant's treating physician controlling weight.

25  The ALJ also erred in concluding that Claimant had skills that were transferable to other jobs

26  identified by the vocational expert because the ALJ did not specifically identify the transferable

27

28  _____
    [1] This matter was submitted without oral argument pursuant to Civil Local Rule 16-5.

skills and did not evaluate what vocational adjustment would be necessary to enable Claimant to perform other jobs. These errors require that the case be remanded. Because the vocational expert testified that a claimant with the physical limitations described in the medical opinion of her treating physician would be unable to do the alternative jobs identified by the vocational expert, the existing record establishes that Claimant is entitled to benefits. The Court therefore GRANTS Plaintiff's motion for summary judgment, DENIES the Commissioner's motion for summary judgment, and REMANDS the case for the calculation and award of benefits.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff seeks disability benefits on behalf of Claimant from the alleged onset date of April 15, 2003 through Claimant's last insured date of June 30, 2009. As of the date last insured, Claimant was 57 years old. Administrative Record ("AR") 28, 91. Claimant obtained a GED and attended some college. AR 91. She reported past employment as a hotel maid, cashier and assistant manager at a hardware store, and work at a loan company. AR 92-93.

Claimant filed a claim for disability benefits on October 12, 2011. AR 253-56. Claimant complained of various medical conditions, including fibromyalgia, depression, and rheumatoid arthritis. AR 275.

After her claim was denied initially and on reconsideration, Claimant requested a hearing before an ALJ. AR 130-31, 169-71. ALJ Ruperta Alexis held a hearing on February 21, 2013, at which Claimant and a vocational expert testified and Claimant was represented by an attorney. AR 35-79. On May 13, 2013, ALJ Alexis issued a decision finding that Claimant had the severe impairment of fibromyalgia but was not disabled as defined in the Social Security Act at any time between April 15, 2003 and June 30, 2009 (the date last insured). AR 132-148. The Appeals Council subsequently vacated the May 13, 2013 decision and remanded the case for the ALJ to review the period from June 30, 2009 to December 31, 2017, on the grounds that "Social Security records indicate the claimant is insured through December 31, 2017." AR 151.[2]

---

[2] On remand, the ALJ concluded that the original May 13, 2013 ALJ decision had correctly concluded that the date last insured was June 30, 2009. AR 19-20. At the hearing on remand, Claimant's counsel agreed that June 30, 2009 was the correct date last insured. AR 86. Plaintiff does not challenge the ALJ's conclusion on the last insured date.

ALJ Timothy Magrum held a hearing on remand on April 16, 2015, at which Claimant and a vocational expert testified and Claimant was represented by an attorney. AR 80-129. On September 4, 2015, ALJ Magrum issued the decision that is the subject of this action, finding that Claimant had the severe impairment of fibromyalgia but was not disabled as defined in the Social Security Act. AR 16-34.

On November 3, 2015, Claimant died. AR 9. Three days later, a Request for Review of the ALJ's decision was filed with the Appeals Council. AR 14-15. The Request for Review was filed in the name of Claimant but lacked her signature. AR 15. Nearly two months later, on December 28, 2015, Plaintiff filed a Notice Regarding Substitution of Party Upon Death of Claimant form, asking to be substituted for Claimant. AR 8-13. On November 9, 2016, the Appeals Council denied Claimant's request for a review of the ALJ's determination by notice addressed to Plaintiff as "Substitute Party." AR 1-6.

On January 5, 2017, Plaintiff filed a timely civil action in this Court. ECF 1. All parties have consented to the jurisdiction of a magistrate judge. ECF 14, 15.

## II.    LEGAL STANDARDS

### A.    Standard of Review

This Court has the authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also* 42 U.S.C. § 405(g). Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted).

The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards. *Id*. "Substantial evidence" means more than a mere scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rounds v. Comm'r of Soc. Sec. Admin.,* 807 F.3d 996, 1002 (9th Cir. 2015) (internal quotation marks and citations omitted). The Court "must consider the evidence as a whole, weighing both the evidence

ALJ Timothy Magrum held a hearing on remand on April 16, 2015, at which Claimant and a vocational expert testified and Claimant was represented by an attorney. AR 80-129. On September 4, 2015, ALJ Magrum issued the decision that is the subject of this action, finding that Claimant had the severe impairment of fibromyalgia but was not disabled as defined in the Social Security Act. AR 16-34.

On November 3, 2015, Claimant died. AR 9. Three days later, a Request for Review of the ALJ's decision was filed with the Appeals Council. AR 14-15. The Request for Review was filed in the name of Claimant but lacked her signature. AR 15. Nearly two months later, on December 28, 2015, Plaintiff filed a Notice Regarding Substitution of Party Upon Death of Claimant form, asking to be substituted for Claimant. AR 8-13. On November 9, 2016, the Appeals Council denied Claimant's request for a review of the ALJ's determination by notice addressed to Plaintiff as "Substitute Party." AR 1-6.

On January 5, 2017, Plaintiff filed a timely civil action in this Court. ECF 1. All parties have consented to the jurisdiction of a magistrate judge. ECF 14, 15.

## II.    LEGAL STANDARDS

### A.    Standard of Review

This Court has the authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015); *see also* 42 U.S.C. § 405(g). Federal courts "leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Brown-Hunter*, 806 F.3d at 492 (internal quotation marks and citation omitted).

The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards. *Id*. "Substantial evidence" means more than a mere scintilla but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rounds v. Comm'r of Soc. Sec. Admin.,* 807 F.3d 996, 1002 (9th Cir. 2015) (internal quotation marks and citations omitted). The Court "must consider the evidence as a whole, weighing both the evidence

United States District Court
Northern District of California

3

that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* (citation omitted). Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's findings if supported by inferences reasonably drawn from the record. *Id.*

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is harmless. *Brown-Hunter*, 806 F.3d at 492. But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Id.* The Court is "constrained to review the reasons the ALJ asserts." *Id.* (citation omitted).

**B.      Standard for Eligibility for Disability Benefits**

Disability benefits are available under Title II of the Social Security Act when an eligible claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled, the ALJ is required to employ a five-step sequential analysis, determining:  (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments that has lasted for more than 12 months; (3) whether the impairment meets or equals one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity (*i.e.*, what a claimant can still do despite her limitations), the claimant can still do her past relevant work; and (5) whether the claimant can make an adjustment to other work. *Ghanim v. Colvin*, 763 F.3d 1154, 1160 and n.5 (9th Cir. 2014) (internal quotation marks and citations omitted).  The burden of proof is on the claimant at steps 1 through 4, but shifts to the Commissioner at step 5. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

////

////

////

////

### III.    DISCUSSION

#### A.    Standing

This district court action was brought by Plaintiff Michael Andrew Russell.  ECF 1.  The Complaint describes Mr. Russell as "heir and representative of the estate of" Claimant but does not further describe his relationship to Claimant.  *Id.*  Nor do the parties address Mr. Russell's status in their cross-motions for summary judgment.  This raises the question of whether Mr. Russell has standing to bring this action seeking review of an ALJ's decision not to award disability benefits to Claimant.

Standing is a jurisdictional limitation that is comprised of both constitutional (Article III) requirements and prudential considerations.  *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99 (1979).  The Commissioner has not challenged Mr. Russell's standing to bring this action, but the requirement of constitutional standing is not subject to waiver, and thus the Court has an independent duty to consider the issue.  *United States v. Hays*, 515 U.S. 737, 742 (1995).  To have constitutional standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

42 U.S.C. § 404(d) governs payment of Social Security disability benefits to survivors or heirs when a claimant is deceased, giving the highest priority to "the person, if any, who is determined by the Commissioner of Social Security to be the surviving spouse of the deceased individual and who either (i) was living in the same household with the deceased at the time of his death or (ii) was, for the month in which the deceased individual died, entitled to a monthly benefit on the basis of the same wages and self-employment income as was the deceased individual."  42 U.S.C. § 404(d)(1).  Section 405(g) empowers an individual to seek judicial review in federal district court of a final decision of the Commissioner "made after a hearing to which he was a party."

Here, the record indicates that Plaintiff was Claimant's spouse and was living in the same household at the time of Claimant's death, thereby satisfying the requirements of Section 404(d)(1).  AR 9.  Moreover, Plaintiff filed a notice of substitution into the administrative

proceedings during the Appeals Council review.  AR 10.  Although the request for Appeals

Council review was filed after Claimant died but before Plaintiff substituted into the proceedings,

"Section 405(g) does not mandate a particular substitution procedure when a claimant's death

occurs after the ALJ's hearing (and unfavorable decision) but before issuance of the Appeals

Council's order on the request for review."  *Weinshenker v. Berryhill*, No. 1:17CV4, 2017 U.S.

Dist. LEXIS 141784, at *11 (M.D.N.C. Sep. 1, 2017) (emphasis in original).  The Notice of

Appeals Council Action was addressed to Plaintiff as "Substitute Party" for Claimant.  AR1.

Under these circumstances, and particularly in light of the Commissioner's failure to

challenge the record evidence showing that Plaintiff is Claimant's surviving spouse and was living

in the same household as Claimant at the time of her death, the Court concludes that Plaintiff

possesses Article III constitutional standing by virtue of his interest under 42 U.S.C. §§ 404(d) and

405(g).

In addition to the requirements for constitutional standing, courts have traditionally

adopted various prudential considerations that preclude the exercise of jurisdiction over some

types of cases even where constitutional standing exists.  For example, the plaintiff's claim

generally must relate to the plaintiff's own legal rights and interests.  *See Elk Grove Unified Sch.

Dist. v. Newdow*, 542 U.S. 1, 12 (2004).  The Ninth Circuit has held that prudential standing

arguments can be waived if not raised in the district court.  *Pershing Park Villas Homeowners

Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 899 (9th Cir. 2000).  Because the Commissioner has

not challenged Plaintiff's standing on prudential grounds, the Court deems the issue waived.

Accordingly, Plaintiff has standing to bring this action.

**B.     Merits**

The ALJ employed the established five-step framework for evaluation of disability claims

and found as follows:

- **Step 1:**  The ALJ found that Claimant did not engage in substantial gainful activity
    from the alleged onset date of April 15, 2003 through her date last insured of
    June 30, 2009.  AR 22.

- **Step 2:**  The ALJ concluded that Claimant had fibromyalgia that qualified as a

6

severe impairment. *Id.*

- **Step 3:** The ALJ held that through the date last insured, Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 405, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, and 404.1526). *Id.*

- **Step 4:** The ALJ determined that through the date last insured, Claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b), with certain limitations, but was unable to perform any past relevant work. AR 24, 28.

- **Step 5:** The ALJ concluded that considering Claimant's age, education, work experience, and residual functional capacity, she had acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy. AR 28-29.

Plaintiff asserts error with respect to the ALJ's determination of Claimant's residual functional capacity (step 4) and the transferability of her skills (step 5). Plaintiff does not seek review of the ALJ's rulings at steps 1, 2, or 3. *See* Pl. MSJ.

**C.     The ALJ's Assessment of Claimant's Residual Functional Capacity**

Plaintiff argues that the ALJ gave too little weight to the opinion of Claimant's treating physician, David True, M.D., that Claimant was disabled. Pl. MSJ at 18-22. Specifically, Plaintiff contends that the ALJ should have determined that Claimant had a number of restrictions identified by Dr. True in a March 25, 2013 opinion. *Id.* at 19. In particular, the ALJ apparently did not credit Dr. True's opinion that (1) Claimant had significant limitations in reaching, handling, and fingering; and that (2) Claimant would require unscheduled 15-minute breaks three or four times a day and that she would have to keep her legs elevated at all times during the work day. AR 888-89. Instead, the ALJ found that Claimant could perform light work, except that "claimant was capable of occasional overhead reach with her left, non-dominant upper extremity" and "occasional kneeling, crouching, crawling, and climbing stairs but never ladders, ropes, or scaffolds." AR 24.

During cross-examination, the vocational expert testified that the three alternative jobs she had identified for Claimant would not be available if Claimant could do no more than occasional fingering or handling, or if Claimant had to have breaks during the day to keep the legs elevated to hip level and above.  AR 126-27.

In social security disability cases, the ALJ must consider all medical opinion evidence.  *See* 20 C.F.R. § 404.1527(b), (c).  Generally, the opinion of a treating physician is entitled to more weight than the opinion of an examining physician, and more weight is given to the opinion of an examining physician than a non-examining physician.  *Ghanim*, 763 F.3d at 1160.  A treating physician's opinion is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  20 C.F.R. § 404.1527(c)(2).

If the ALJ gives a treating physician's opinion less than controlling weight, the ALJ must comply with two requirements.  First, the ALJ must consider other factors specified in 20 C.F.R. § 404.1527(c)(2)—such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability and consistency of the opinion, and the specialization of the physician—in determining what weight to give that opinion.  *Orn v. Astrue*, 495 F.3d 625, 632-33 (9th Cir. 2007).  The failure to consider these factors constitutes reversible error.  *Trevizo v. Berryhill*, No. 15-16277, 2017 U.S. App. LEXIS 17979, at *24 (9th Cir. Sep. 14, 2017).  Second, the ALJ must provide reasons for rejecting the treating physician's opinion.  *Id.* at *22.  The legal standard those reasons must satisfy depends on whether the treating physician's opinion is contradicted.  *Id.*  If the treating doctor's opinion is contradicted by another doctor's opinion, the ALJ may only reject the treating doctor's opinion by providing specific and legitimate reasons that are supported by substantial evidence.  *Id.*  To reject the uncontradicted opinion of a treating doctor, the ALJ must state clear and convincing reasons that are supported by substantial evidence.  *Id.*

In this case, the ALJ stated that he gave "little weight" to the opinion of Dr. True, who began treating Claimant in 2012, several years after her last insured date.  AR 27.  The ALJ considered some of the relevant factors specified in 20 C.F.R. § 404.1527(c)(2) but failed to

identify clear and convincing reasons, supported by substantial evidence, for not giving Dr. True's uncontradicted opinion controlling weight.

### 1.    ALJ's consideration of 20 C.F.R. § 404.1527(c)(2) factors

Here, having decided not to afford Dr. True's opinion controlling weight, the ALJ was required to analyze the factors under section 404.1527(c)(2). The ALJ addressed some of these factors. He stated that Dr. True was a primary care physician who had "treated the claimant every three months since February 2012," which was "almost three years after her date last insured." AR 27. The ALJ also concluded that Dr. True's opinion "conflicts with the evidence," including Claimant's testimony at the 2013 hearing and her function reports and testimony. AR 27. The ALJ did not expressly address other factors under section 404.1527(c)(2), such as the nature and extent of the treatment relationship, the consistency of Dr. True's opinion, and Dr. True's specialty. As discussed below, even though the ALJ to some extent considered certain relevant factors, he failed to identify clear and convincing reasons, supported by substantial evidence, for discounting Dr. True's opinion.

### 2.    ALJ's reasons for giving Dr. True's opinion less than controlling weight

The ALJ did not identify any medical opinions that contradicted that of Dr. True. The ALJ referred to four other doctors who completed residual functional capacity assessments, but gave these opinions "little weight" because he found that their conclusions that there was insufficient evidence to form an opinion regarding the Claimant's functional capacity on or before her date last insured were inconsistent with the evidence. AR 27. Accordingly, Dr. True's medical opinion was not contradicted by any other medical opinion in the record.

Moreover, the medical records from the adjudicative period support, rather than contradict, Dr. True's opinions. Dr. True's opinion that Claimant had fibromyalgia is consistent with her diagnosis in September 2006 by her treating physician at the time, Alan L. Brodsky, M.D. As the ALJ noted, Claimant reported pain in various parts of her body including her shoulder, knee, neck, upper back, arm, hands, and feet during the adjudicative period, although some of these symptoms

were periodically alleviated through surgery, medication, and other treatment. *See* AR 25-26. As for the specific limitations found by Dr. True, Claimant was seen by Deborah Westergaard, M.D., a pain management specialist, on June 29, 2009, the day before her last insured date. AR 620. Claimant complained of neck, arm, back, and knee pain, with the area of greatest pain intensity being the neck with pain radiating into the shoulders. *Id.* Claimant complained of tingling in both arms into the fingers, as well as radiating pain in the left arm and the fingers and palm of the left hand and significant weakness in her left hand. *Id.* Dr. Westergaard's physical examination found "significantly decreased left hand grip strength." AR 623. Dr. Westergaard noted deficient arm reflexes and "extremely sensitive multiple cervical and shoulder area trigger points." *Id.* These findings are not inconsistent with Dr. True's opinion that Claimant had limitations in reaching, handling, and/or fingering. AR 889.

Because Dr. True's opinion was uncontradicted, the ALJ was required to provide clear and convincing reasons, supported by substantial evidence, for discounting that opinion. *See Ghanim*, 763 F.3d at 1160. The ALJ failed to meet this high standard.

### a) Time period of Claimant's treatment by Dr. True

One reason the ALJ cited for discounting Dr. True's opinion is that Dr. True's treatment commenced years after Claimant's date last insured. AR 27. Medical evaluations made after the expiration of a claimant's insured status should not be disregarded solely on the basis that they are rendered retrospectively. *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). Nevertheless, the retrospective nature of the treating physician's opinion can, in proper cases, provide a basis for discounting that opinion. For example, in *Magallanes v. Bowen*, the Ninth Circuit held that an ALJ had properly rejected the opinion of a treating physician regarding the onset date of a claimant's disability where the physician had not treated her at that time. 881 F.2d 747, 754 (9th Cir. 1989). The Court noted that a treating physician who did not begin treating a claimant until after the time period at issue is "scarcely different from any non-treating physician with respect to that time period." *Id. Magallanes* is distinguishable from this case, however, because the treating physician's opinion in *Magallanes* was contradicted by other evidence, including opinions from

10

other physicians. Because the treating physician's opinion conflicted with other medical opinions, the ALJ was required make findings that set forth "specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Id.* at 751. By contrast, where (as in this case) the retrospective opinion of the treating physician is uncontradicted, a higher standard applies: the ALJ may disregard that opinion only if he provides clear and convincing reasons that are supported by the record as a whole. *Id.* The fact that Dr. True did not begin treating Claimant until after her date last insured does not, by itself, provide a legitimate basis for discounting Dr. True's uncontradicted opinion.

### b) **Plaintiff's daily activities**

Another reason the ALJ cited for giving "little weight" to Dr. True's opinion is that it "conflicts with the evidence, including the claimant's own testimony at the prior hearing that she was able to work fulltime in a sedentary capacity in 2006" and "the claimant's function reports and testimonies that she was able to clean her home, cook full meals, and shop in stores." AR 27.

A treating physician's opinion may be rejected where it conflicts with a claimant's daily activities, but this principle has no application where "a holistic review of the record does not reveal an inconsistency between the treating providers' opinions and [the claimant's] daily activities." *Ghanim,* 763 F.3d at 1162. Moreover, a claimant is not required to be totally incapacitated to be eligible for benefits, and "many home activities are not easily transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication". *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ concluded that Claimant "had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) … except that claimant was capable of occasional overhead reach with her left, non-dominant upper extremity" and "occasional kneeling, crouching, crawling, and climbing stairs but never ladders, ropes, or scaffolds." AR 24. The ALJ thus rejected certain limitations that Dr. True had found, including far more extensive limitations on reaching, handling, and fingering and the Claimant's need to keep her legs elevated and take three to four unscheduled breaks during the work day. AR 888-89.

1    The evidence cited by the ALJ does not support his findings as to Claimant's residual

2  functional capacity for reaching, handling, or fingering.  The ALJ noted that Claimant's function

3  reports stated that she performed daily activities including cooking, cleaning, doing laundry,

4  handling personal care, paying bills, reading, watching TV, using public transportation, shopping

5  at stores such as Target, and checking mail.  AR 26.  But the ALJ ignored statements throughout

6  Claimant's testimony and in her function reports showing limitations affecting Claimant's ability

7  to reach, handle, and finger.  *See, e.g.,* AR 93 ("my hands cramp, I can't move them sometimes");

8  AR 97 ("It's hard to write anything because my fingers cramp up or it's hard to even use a

9  typewriter," and this problem with her fingers has been going on more than ten years); AR 97-98

10  ("I need help snapping bras, doing buttons"); AR 299 ("it hurts my hand to write my fingers get

11  cramped"); AR 303 ("don't do much it's hard to do crafts & paint when my fingers cramp"); AR

12  304 (noting that her condition affects activities including reaching; "Lifting sometimes its hard to

13  lift a cup"); AR 316 ("I can't lift anything – it causes a Burning sensation in my upper neck down

14  into my arms & shoulder Blades"); AR 317 ("hard time buttoning"); AR 321 (noting that her

15  condition affects activities including reaching and using hands).  Although the ALJ noted that

16  "[t]hese function reports were dated two years after the date last insured, which suggests she was

17  even more functional during the adjudicative period" (AR 26), the ALJ does not cite any evidence

18  from the adjudicative period that conflicts with Dr. True's opinion as to Claimant's limitations in

19  reaching, handling, or fingering.

20    The ALJ also apparently did not credit Dr. True's opinion that Claimant would need three

21  to four 15-minute unscheduled breaks during the day and that Claimant's legs should always be

22  elevated.  AR 888-89.  But the ALJ cited no evidence that conflicted with Dr. True's opinion.  The

23  fact that Claimant may have been able "to work fulltime in a sedentary capacity in 2006" and "was

24  able to clean her home, cook full meals, and shop in stores" (AR 27) does not mean that Claimant

25  would not have needed to take frequent unscheduled breaks from work due to her pain.  Claimant

26  testified that she did things around the house, like washing the dishes, that "never get finished"

27  because "I get tired and I have to sit down . . . "  AR 108.  In one of her function reports, Claimant

28  stated that she needed rest while doing housework.  AR 301.  Claimant also stated that since her

condition began, her cooking habits changed to making easy meals or ordering out rather than cooking from scratch. AR 301; AR 318. Although Claimant testified that she shopped in stores, she also stated that she used a scooter or leaned on a cart to do grocery shopping. AR 109. Moreover, Claimant testified that she left her 2006 job because her boss wanted her to work full time rather than part time. AR 111-12; *see also* AR 41 (boss "wanted [her] to work more hours and [she] couldn't work the hours he was giving [her], as it was.").

Non-specific evidence about a claimant's daily activities, such as the evidence cited by the ALJ, does not provide a clear and convincing reason, supported by substantial evidence, for discounting a treating physician's opinion. The Ninth Circuit's recent decision in *Trevizo v. Berryhill* is instructive. In that case, the ALJ discounted an opinion by a treating physician that a claimant could perform less than the full range of sedentary work as a result of her psoriasis and other conditions. The ALJ pointed to the claimant's childcare responsibilities as evidence inconsistent with the treating physician's opinion. Because the treating physician's opinion in that case was contradicted by the opinions of other physicians, the ALJ needed to provide only "specific and legitimate reasons that are supported by substantial evidence"—rather than the "clear and convincing" reasons that are required where (as here) the treating physician's opinion is uncontradicted. 2017 U.S. App. LEXIS 17979, at *22. Even so, the Ninth Circuit held that the ALJ's rejection of the treating physician's opinion was legal error because "the record provides no details as to what [the claimant's] regular childcare activities involved," such as "the extent to which and the frequency with which [the claimant] picked up the children, played with them, bathed them, ran after them, or did any other tasks that might undermine her claimed limitations." *Id.* at *24. "Absent specific details about [the claimant's] childcare responsibilities, those tasks cannot constitute 'substantial evidence' inconsistent with [the treating physician's] informed opinion. *Id.* at *25.

Similarly, in this case, where the higher "clear and convincing reasons" standard applies, the record of the daily activities performed by Claimant is an insufficient basis for discounting Dr. True's opinion, especially when the ALJ has ignored evidence showing that Claimant had significant limitations on her ability to perform tasks such as dressing, cooking, cleaning, and

13

shopping.

### c) Alleged gaps in Claimant's treatment for fibromyalgia

In further support of support of his conclusion that the medical evidence "does not support the claimant's allegations about the severity of her joint pain," the ALJ stated that after Claimant was seen by Dr. Brodsky in November 2006, "the evidence showed the claimant sought no ongoing treatment for fibromyalgia until April 2009, when she reported to Julia Graves, M.D.," who then referred Claimant to pain management. AR 26. This finding is not supported by the record. Dr. Graves' records from March and April 2009 recorded that Claimant had been seeing Dr. Henderson for pain management. AR 564 (March 19, 2010 progress note stating that Claimant "sees pain doc"); AR 565 (April 14, 2009 progress note stating that Claimant "was seeing [sic] Dr. Henderson – pain"). The records from Claimant's visit with Dr. Westergaard in June 2009 confirm that Claimant "was seeing Dr. Henderson" but explain that "he is now out of practice and she does not know how to get a copy of her records." AR 621; *see also* AR 623 ("Patient is unable to obtain her records. Every time she contacts her pain physician's office she gets a message that the phone has been disconnected."). Claimant testified that she had been seeing Dr. Henderson, a pain management specialist, but during an appointment with Dr. Henderson, "the DEA came in, along with other people, security, and shut them down." AR 99. Claimant testified that she was without pain management for only "a couple months" before she started seeing Dr. Westergaard in June 2009. *Id.* Thus, there is no substantial evidence to support the ALJ's finding that Claimant did not seek treatment for pain between November 2006 and April 2009.

### d) Claimant's credibility

The ALJ remarked at several points in his decision that he found that Claimant's statements concerning her symptoms were not entirely credible. *See, e.g.,* AR 26 ("the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision"); AR 27 ("Further bearing on the claimant's credibility is her medical treatment record"). The Ninth Circuit has established a two-step analysis for determining the extent to which a claimant's testimony about her symptoms must

14

be credited. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to cause some degree of the symptoms alleged. *Trevizo*, 2017 U.S. App. LEXIS 17979, at *28. Second, if the claimant satisfies the first step and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so." *Id* (citation omitted). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)).

Here, at step 1 of the credibility determination, the ALJ found that Claimant had the severe impairment of fibromyalgia that "could reasonably be expected to cause some of the alleged symptoms." AR 26. He nevertheless found "the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." *Id.* However, at step one of the credibility analysis, the claimant is not required to show her impairment could reasonably be expected to cause the severity of the symptom she has alleged, and she need not produce objective medical evidence of the symptom or severity thereof. *Trevizo*, 2017 U.S. App. LEXIS 17979, at *28. Moreover, at step 2 of the credibility determination, the ALJ did not make any finding of malingering. Accordingly, the ALJ could reject the Claimant's testimony about the severity of her symptoms only if he identified specific, clear, and convincing reasons for doing so. *Id.*

The ALJ's finding that Claimant was able "to work fulltime in a sedentary capacity in 2006" (AR 27) is not supported by the record and fails to justify the ALJ's rejection of Claimant's testimony about the severity of her symptoms. The Claimant testified that she worked "in between part time and full-time" for six months in 2006 and that she left that job, at least in part, because her boss wanted her to work full time rather than part time. AR 111-12; *see also* AR 41 (boss "wanted [her] to work more hours and [she] couldn't work the hours he was giving [her], as it was."). The evidence concerning Claimant's 2006 job does not provide a specific, clear, and convincing reason for finding her testimony regarding symptoms less than credible. *Id.*

As discussed above, the ALJ noted that Claimant's function reports stated that she

performed daily activities but ignored statements throughout the function reports showing

limitations in Claimant's use of her hands and her need for breaks throughout the day. The ALJ

noted that the function reports completed by Claimant "were dated two years after the date last

insured, which suggests she was even more functional during the adjudicative period." AR 26.

He also stated that Claimant "admitted this during her testimony, when she stated that used [sic] to

complete 'a lot more' tasks." *Id.* Although it is true that Claimant testified at the April 2015

hearing that she was "doing a lot less" than she had been doing "back then," this testimony was

ambiguous as to the timing. AR 109. Claimant first saw Dr. Westergaard in June 2009. AR 26,

620. At the April 2015 hearing, Claimant testified as follows:

> Q:    Okay. I want you to compare what your current daily activities are to what your activities were at the time you first saw Dr. Westergaard in 2009? Are you doing more now, less now, the same now? How does it compare with back then?
>
> A:    I'm doing a lot less.
>
> Q:    Well, how much more were you doing back then?
>
> A:    I used to go out and take – be able to take walks and part of that time is when I worked at Fast Bucks.
>
> Q:    No. When did you last work at Fast Bucks?
>
> A:    In –
>
> Q:    That was 2003, wasn't it?
>
> A:    Yeah.
>
> Q:    Okay. That was six years before you saw Dr. Westergaard and you saw Dr. Westergaard –
>
> A:    Because I was seeing Dr. Henderson and then they –
>
> Q:    Right –
>
> A:    – took me.
>
> Q:    Right. So, at the time you switched from Henderson to Westergaard, were you doing a whole lot more during the day?

A:     No.

AR 110.  This ambiguous testimony does not provide a specific, clear, and convincing basis for the ALJ's conclusion that Claimant "was even more functional during the adjudicative period" than she was at the time of her disability hearing.

In conclusion, as discussed above, the reasons cited by ALJ are not clear and convincing reasons, supported by substantial evidence, for giving "little weight" to the uncontradicted opinion of Dr. True.  Accordingly, the ALJ erred in declining to find Dr. True's opinion to be controlling. Because the vocational expert testified that a claimant with the physical limitations described in Dr. True's medical opinion would be unable to do the alternative jobs identified by the vocational expert, Dr. True's opinion "alone establishes that [Claimant] is entitled to benefits." *See Trevizo*, 2017 U.S. App. LEXIS 17979, at *27 (citation omitted).

**D.     The ALJ's Findings on Transferable Skills**

At step 5, the ALJ must determine whether the claimant is able to do any other work considering her residual functional capacity, age, education, and work experience.  20 C.F.R § 404.1520(g)(1).  The Social Security regulations explain that transferable skills exist "when the skilled or semi-skilled work activities [the claimant] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work."  20 C.F.R. § 404.1568(d)(1).  The regulations also state that "[t]ransferability is most probable and meaningful among jobs in which – (i) The same or a lesser degree of skill is required; (ii) The same or similar tools and machines are used; and (iii) The same or similar raw materials, products, processes, or services are involved."  20 C.F.R. § 404.1568(d)(2).

Here, the ALJ concluded that Claimant had acquired "general clerical" skills from her past relevant work as assistant manager of a hardware store that were transferable to three other occupations with jobs existing in significant numbers in the national economy:  order clerk food/beverage; data entry clerk; and appointment clerk.  AR 28-29.  Each job is discussed below.

////

**Order clerk food/beverage:** The vocational expert identified "order clerk food/beverage," Dictionary of Occupational Title ("DOT") 209.567-14, as one job that Claimant could perform. AR28. As acknowledged by the ALJ, this position has a Specific Vocational Preparation ("SVP") of 2. AR29; DOT 209.567-14. An SVP of 2 corresponds to unskilled work. Social Security Ruling ("SSR") 00-4p, 2008 SSR LEXIS 8. However, because Claimant was of advanced age (57 years old) as of her date last insured and, according to the ALJ, had a severe impairment that limited her to no more than light work (with limitations) (AR 24), her skills had to be transferable to skilled or semiskilled light work. 20 C.F.R. 404.1568 (d)(4). The Commissioner concedes that this position is not at issue because it is an unskilled job. Def. MSJ at 3 n.3.

**Appointment clerk:** The vocational expert identified "appointment clerk," DOT 237.367-010, as one job that Claimant could perform. AR29. As acknowledged by the ALJ, this position has an SVP of 3. AR28; DOT 209.567-14. An SVP of 3 corresponds to semiskilled work. SSR 00-4p. Thus, this position meets the requirement that Claimant's skills had to be transferable to skilled or semiskilled light work. 20 C.F.R. 404.1568 (d)(4).

**Data entry clerk:** The vocational expert identified "data entry clerk," DOT 203.582-054, as one job that Claimant could perform. AR28. As acknowledged by the ALJ, this position has an SVP of 4. AR28; DOT 209.567-14. An SVP of 4 corresponds to semiskilled work. SSR 00-4p. Thus, this position meets the requirement that Claimant's skills had to be transferable to skilled or semiskilled light work. 20 C.F.R. 404.1568 (d)(4).

Plaintiff contends that the ALJ erred in concluding that Claimant had gained skills in her position as an assistant store manager that were transferable to jobs as an appointment clerk or data entry clerk. The Commissioner argues that Plaintiff waived these arguments and that, in any event, the ALJ's transferable skills analysis was correct.

////

### 1.     Waiver

The Commissioner argues that Plaintiff waived any argument concerning transferability of skills by failing to question or otherwise challenge the vocational expert's testimony on this issue during the hearing before the ALJ.  Def. MSJ at 3.  Even if the doctrine of issue exhaustion applies in the context of social security disability determinations, a claimant can preserve issues by raising them before the Appeals Council.  *See Brewes v. Comm'r of Soc. Sec Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012) (on review of ALJ's decision, administrative record includes evidence presented for the first time to Appeals Council).  Here, Claimant raised the ALJ's failure to address whether vocational adjustment was required in her brief to the Appeals Council.  AR 364-65.  Accordingly, Claimant did not waive her argument that the ALJ's transferable skills analysis was erroneous.

### 2.     Identification of transferable skills and vocational adjustment

Plaintiff challenges the ALJ's determination at step 5 on the grounds that the ALJ's finding that Claimant had transferable "general clerical" skills was not supported by substantial evidence.  *See* Pl. MSJ at 8.  According to Plaintiff, Claimant was not asked what clerical functions she performed as assistant manager, and the vocational expert did not identify what specific skills would transfer.  *Id.* at 7-8.  "When transferability of skills is an issue and must be decided, the ALJ is required to make certain findings of fact and include them in the written decision."  *Bray*, 554 F.3d at 1223 (quoting SSR 82-41, 1982 SSR LEXIS 34, at *19).  Specifically, "[w]hen a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the ALJ's decision."  *Id*.

Moreover, "[i]n order to find transferability of skills to skilled sedentary work for individuals who are of advanced age (55 and over), there must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry."  *Id.* (citing 20 C.F.R. pt. 404, subpt. P, app. 2 § 201.00(f)).  The vocational expert testified that the two relevant jobs—appointment clerk and data entry clerk—were sedentary.  AR 121-22.

Here, the ALJ stated that Claimant had acquired "general clerical" skills from her work as

assistant manager of a hardware store. AR 28. This is not a sufficient identification of the acquired work skills. Nor did the ALJ or the vocational expert address whether Claimant, who was of advanced age as of the date last insured (*id.*), would have to undergo more than minimal "vocational adjustment" to perform successfully the tasks required of the other jobs. Because the ALJ's conclusion that Claimant was not disabled was based in part on his finding that she had transferable work skills, these errors in the ALJ's evaluation of Claimant's transferable work skills warrant a remand. *See Bray*, 554 F.3d at 1226.

### 3. **Transferability under other rubrics**

Plaintiff also argues that the ALJ erred in determining that Claimant's skills from being an assistant manager were transferable to other positions as an appointment clerk or data entry clerk because the "work field" and "Material, Products, Subject Matter, and Services ('MPSMS')" codes for those other positions differ from those for an assistant manager. *See* Pl. MSJ at 13. According to Plaintiff, "[u]se of SVP [specific vocational preparation], work fields, and MPSMS codes has long stood as the only acceptable methodology" for transferability of skills and that "[t]ransferability does not exist between an assistant manager and an appointment clerk or data entry clerk when using the universally recognized methodology of work fields and MPSMS codes." *Id.* at 11, 15-16.

Plaintiff cites no legal authority to support this argument. To the contrary, the only cases the Court has identified on this issue have universally rejected Plaintiff's argument. As another court has explained:

> The only legal authority that this Court could find that referred to the MPSMS was an unpublished Ninth Circuit memorandum decision that rejected the plaintiff's argument as "non-persuasive" that "her skills are not transferable because the alternate work positions suggested by the ALJ are not found under the same work file number or Material, Products, Subject Matter, and Services number as her prior position of Shipping and Receiving Clerk in the Dictionary of Occupational Titles." *See Thompson v. Barnhart*, 148 F. App'x 634, 635 (9th Cir. 2005). No other Ninth Circuit or district court case relies upon, or even cites, Plaintiff's purported "only responsible methodology" theory.

*Garcia v. Astrue*, No. 1:11-cv-00774-SKO, 2012 U.S. Dist. LEXIS 132493, at *21-22 (E.D. Cal. Sept. 17, 2012); *see also Hartley v. Colvin*, No. 2:13-cv-1863 AC, 2014 U.S. Dist. LEXIS 159309,

*17 (E.D. Cal. Nov. 12, 2014) ("plaintiff's contention that the vocational expert must rely on matching work fields and MPSMS codes when analyzing transferability is unsupported by any legal authority. In fact, the regulations specify that a complete similarity of degree of skill, tools and machinery used, and raw materials, products, processes or services involved 'is not necessary for transferability.'"); *Nunez v. Colvin*, No. EDCV 13-2131 AGR, 2014 U.S. Dist. LEXIS 133183, at *12 (C.D. Cal. Sep. 22, 2014), vacated on other grounds, 673 Fed. Appx. 776 (9th Cir. 2017) (rejecting argument that vocational expert must rely on matching work fields and MPSMS codes when analyzing transferability).

Plaintiff's argument that the ALJ erroneously failed to evaluate transferability under Program Operational Manual Systems ("POMS") is similarly misplaced. "Court decisions have rejected the notion that use of the POMS WF and MPSMS codes is required [and] POMS itself, like the Regulations, does not require a complete similarly of all factors considered in evaluating the degree of vocational adjustment required." *Engel v. Colvin*, No. SACV 14-01989-JEM, 2015 U.S. Dist. LEXIS 144467, *13-14 (C.D. Cal. Oct. 23, 2015).

The ALJ's reliance on the vocational expert's testimony and the DOT in evaluating transferability of skills was proper.

### E.     Disposition

Because the Court has concluded that the ALJ erred in discounting the opinion of Dr. True and in analyzing Claimant's transferable skills, the Court must decide whether to remand the case to the Social Security Administration for further proceedings or for the payment of benefits. Remand is appropriate where it is not clear from the record whether the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, "where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Id.* at 593 (citations omitted). "More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting

the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Id.* (citations omitted).

Because the Court concludes that the ALJ did not provide legally sufficient reasons for discounting the opinion of Dr. True, that opinion is treated as true. *See id.* at 594. Dr. True's opinion, credited as true, mandates an award of benefits. Dr. True opined that Claimant had limitations in her reaching, handling, and fingering abilities and would need to take breaks and keep her legs elevated throughout the work day. AR 889-91. At the administrative hearing, the vocational expert admitted that these limitations would not be accommodated in the alternative jobs she had identified for Claimant—appointment clerk or data entry clerk. AR 126-27. Thus, the evidence already in the record establishes that Claimant cannot perform her past relevant work or other jobs in the national economy. Moreover, no additional evidence can be adduced from Claimant on remand because she is now deceased.

Under these circumstances, remand with a direction for payment of benefits is appropriate.

## IV. CONCLUSION

For the reasons discussed above, the Court GRANTS Plaintiff's motion for summary judgment, DENIES the Commissioner's motion for summary judgment, and REMANDS for the calculation and award of benefits.

**SO ORDERED.**

Dated: October 6, 2017

SUSAN VAN KEULEN
United States Magistrate Judge

22